OPINION OF THE COURT
Jones, J.
We hold that the determination made in a property damage arbitration proceeding between two insurance carriers disallowing the disclaimer of coverage by one of them is binding in a controversy between the same carriers in a subsequent personal injury action arising out of the same accident.
The relevant facts for the purposes of this appeal are not disputed. On May 31, 1972 Mr. and Mrs. Messinger were injured when the automobile owned and driven by him in which she was a passenger was struck in the rear by a vehicle owned by Gerald Zook and driven by Thomas Nobles. The Messingers commenced an action against Zook and Nobles to recover for personal injuries. On August 10, 1973 Aetna Casualty and Surety Company, insurer for Zook, disclaimed on the grounds of late notice and lack of co-operation.
On August 1, 1973 American Insurance Company, carrier for the Messingers, pursuant to the Nationwide Inter-Company Arbitration Agreement, requested arbitration of its claim for subrogation with respect to the payment of $4,704.51 which it had made to its insured on account of property damage to the Messinger automobile incurred in the May 31 accident. Aetna objected to the arbitration on the ground that its insured had not complied with the cooperation provision of its policy. The arbitration proceeded to award on January 11, 1974 in which the three-member panel rejected the disclaimer *188 and assessed damages against Aetna in the amount of $1,201.12.
On June 13, 1974 the Messingers made a demand for uninsured motorist arbitration against their insurer, American, based on Aetna’s asserted disclaimer of coverage. On September 10, 1974 Special Term granted American’s motion to stay the Messinger arbitration pending trial in the personal injury action of the preliminary issue as to the merit of Aetna’s disclaimer.
American then moved in the personal injury action to strike Aetna’s disclaimer and for summary judgment directing Aetna to afford coverage to Zook. American based its motion on the ground that the determination with respect to the disclaimer issue in the January 11, 1974 arbitration award relative to the subrogation claim—in favor of American and adverse to Aetna—was binding in the personal injury action. Special Term granted American’s motion, struck the asserted disclaimer and directed Aetna to defend on behalf of its insured Zook. Special Term also treated American’s motion as an application to confirm the award in the property damage arbitration and confirmed the award which had originally held Aetna’s disclaimer invalid. The Appellate Division unanimously affirmed and granted leave to appeal to our court. In our turn we now affirm the dispositions below.
In an unusual development, in our court respondent American, which had prevailed in both courts below, has now joined with appellant Aetna to urge that the order of the Appellate Division be reversed (with support in an amicus curiae brief filed on behalf of the Committee on Insurance Arbitration).[1] It is asserted that to hold that the determination in the property damage subrogation claim arbitration proceeding is binding in the subsequent personal injury action will be to endanger the entire intercompany arbitration system on which the insurance industry relies so heavily for efficient disposition of internal controversies. In a joint supplemental brief, the two insurance company litigants state: "The inter-company arbitration proceedings, such as the one in the present case, are *189 now firmly embedded in the insurance industry in New York State. These proceedings were intended by the industry to provide an informal procedure whereby disputes which concerned the insurance industry solely could be resolved by carriers pursuant to the procedures voluntarily established by the industry. As a result of such proceedings, the insurance industry, therefore, was able to resolve disputes which otherwise would have been forced into the court system with a resultant increase in court congestion coupled with substantial increase in the cost of disposing of minor claims. These proceedings, as intended by the industry and as applied by the carriers who were signatories to the agreement, have long had the salutary effect of alleviating court congestion in New York State. The inter-company arbitration determinations have handled in an expeditious and informal manner disputes existing between carriers, with no recourse had to the courts. An affirmance herein would mean that the utilization of inter-company arbitration panels would be potentially decreased materially (and the litigation in connection therewith forced upon the courts).”
Fundamental to our consideration of the present appeal is recognition that in general the doctrines of claim preclusion and issue preclusion between the same parties (more familiarly referred to as res judicata or direct estoppel)[2] apply as well to awards in arbitration as they do to adjudications in *190 judicial proceedings (Rembrandt Inds. v Hodges Int., 38 NY2d 502; New York Lbr. & Wood Working Co v Schneider, 119 NY 475; Wiberly v Matthews, 91 NY 648; 23 Carmody-Wait 2d, NY Prac, Arbitration, § 141:151, p 80).
Next we observe that the question presented must be resolved under principles of issue preclusion between the same parties. That is to say, the question now before us is the effect to be accorded the determination with respect to a particular issue made in a proceeding between two parties when the same issue is raised in a subsequent proceeding between the same two parties. This is not an instance of issue preclusion in subsequent litigation between different parties, in which the question would be the effect to be accorded a prior determination when the same issue arises in a subsequent proceeding to which one of the former litigants is a party but where the adversaries in the second proceeding are not the same as those in the first proceeding. Therefore our decisions in Schwartz v Public Administrator of County of Bronx (24 NY2d 65) and B. R. DeWitt, Inc. v Hall (19 NY2d 141) are not on point. In each of those cases the question was whether one of two parties to the trial of the personal injury aspect of an automobile accident which was first litigated would later be bound by, i.e., precluded from relitigating, a determination therein adverse to it when the same issue was raised in a subsequent action for property damage brought against one of the prior litigants but involving different adversaries. No case has been brought to our attention in which our court has applied the Schwartz analysis and principles to situations of issue preclusion between the same parties, and we do not do so now.
We turn then to the several contentions urged by the parties as grounds for reversal of the determinations below that in the present personal injury action Aetna is bound by the rejection in the property damage arbitration of its right to disclaim and thus is precluded from relitigating that issue. For the purposes of our analysis and disposition these contentions can be grouped in four categories. The first relates to assertions of error committed in the arbitration proceeding. Thus, it is stated that under the express terms of the Nationwide Inter-Company Arbitration Agreement, arbitration of a controversy thereunder "must be deferred until all companion claims or suits not subject to arbitration have been disposed of by settlement or otherwise, except that all parties to the *191 arbitration may agree to waive deferment”. In this instance it is obvious that the personal injury claims had not been disposed of and thus the statement in American’s demand for arbitration that no companion claims or suits were pending was wholly inaccurate. It is asserted that inasmuch as the parties proceeded to arbitration under a mutual mistake of fact and there was no waiver of deferment, the arbitration award was invalid and should not be given any effect for present purposes. The response is clear. Whether or not there is merit to the contentions that it was error to have proceeded to arbitration or that there was no valid agreement to arbitrate, such issues present questions which either must be raised as threshold questions under CPLR 7503 (subd [b]) or are for the arbitrator in the arbitration proceeding. (Matter of Aaacon Auto Transp. [State Farm Mut. Auto. Ins. Co.], 41 NY2d 951, 951-952; Pearl St. Dev. Corp. v Conduit & Foundation Corp., 41 NY2d 167, 170-171; Aetna Life & Cas. Co. v Stekardis, 34 NY2d 182, 185-186.) Errors in the arbitration proceeding, whether of fact or law, are beyond the scope of judicial review and clearly may not now be raised in this subsequent judicial proceeding. (Matter of Wolff & Munier [Diesel Constr. Co.], 36 NY2d 750, 752; Matter of Raisler Corp. [New York City Housing Auth.], 32 NY2d 274, 279.)
Next, our attention is drawn to what it is argued are the several substantial infirmities and deficiencies in the arbitration proceeding, very much along the lines of a Schwartz analysis. Thus it is pointed out that the arbitration proceeding was a summary, pro forma proceeding at best. The two companies merely sent the arbitrators their files; there was no hearing and no oral testimony or other documentary proof; there was no oral argument and no briefs were filed. The award itself was brief, almost cursory. To these contentions the response is twofold. First, the voluntary choice of the arbitration forum necessarily imports acceptance of the more summary, informal and less structured procedures which characterize arbitration as compared with judicial litigation. Second, to the extent that this particular arbitration was even more informal and casual than most, there is nothing to suggest that this was not the consequence of the voluntary election by two insurance companies to proceed as they did. They must be held to have waived any procedural rights which they might otherwise have had and to have accepted the arbitration proceeding as they chose to conduct it. (Cf. *192 CPLR 7506, subd [f].) Even under Schwartz the requirement is only that there have been a "full and fair opportunity to contest the decision now said to be controlling” (24 NY2d 65, 71; emphasis supplied), not that there have in fact been a full and fair contest.
In another Schwartz-type argument it is asserted that Aetna had no real incentive to press a vigorous disclaimer defense in the property damage litigation. Our attention is drawn to the relative disparity in amount between the property damage and the personal injury claims. The suggestion is that because Aetna may not have really tried in the first arbitration it should not be bound by the resulting award. This, too, is an unpersuasive and unattractive argument in a situation of issue preclusion between the same parties. We cannot visualize acceptance, for instance, of the conceptually parallel argument that a party against whom partial summary judgment has been granted in one action should be relieved of its consequences in a second action between the same parties because, lacking incentive in the first action, that party put up only a halfhearted defense and submitted nothing but its file and an incomplete or even sloppy affidavit in opposition to the motion. The consequences of issue preclusion between the same parties are not to be vitiated by lack of enthusiasm or effort on the part of the loser. (But cf. Restatement, Judgments 2d, § 68.1, subd [e], par [iii].)
On still another tack the parties jointly assert that there is no affirmative evidence to prove that they ever intended that the award in arbitration should have an estoppel effect in any subsequent litigation between them. By like token and more significant, however, there is no evidence to establish that they manifested an intention, let alone agreed, that there be no such consequence. The doctrines of claim preclusion and issue preclusion do not depend on any manifested or presumed intention of the parties; they rest on the desirability in the public interest of judicial repose and of the orderly termination of controversy. "The common-law doctrine of res judicata, designed to bar relitigation of adjudicated issues, is the law’s recognition of the fact that it is to the interest of the State that there should be an end to litigation” (Israel v Wood Dolson Co., 1 NY2d 116, 118; Matter of New York State Labor Relations Bd. v Holland Laundry, 294 NY 480, 493-494; see 9 Carmody-Wait 2d, NY Prac, Judgments, § 63:197, p 198). We do not say that an understanding to limit estoppel conse *193 quences, if established by the evidence, preferably unequivocal, may not serve to restrict or modify what would otherwise be the applicable rule. It will not suffice, however, to urge by way of afterthought that the parties never intended a subsequently binding effect. In this instance there was here no tender of any proof of an intention not to be bound, and evidence of intention to be bound has never been a prerequisite to the application of issue or claim preclusion.[3]
In reaching the decision we do, we acknowledge our awareness of the earnest and sincere apprehension on the part of both insurance companies and of the amicus that an affirmance will disrupt an effective and widespread system of arbitration under the Nationwide Inter-Company Arbitration Agreement and throw back a multitude of relatively small claims on our already crowded court calendars. We suggest that if this is a real risk, and we have no reason to doubt that it is, the remedy is available and practicable. We have noted elsewhere that voluntary arbitration is grounded in the agreement of the parties (County of Sullivan v Edward L. Nezelek, Inc., 42 NY2d 123, 128). The longer term solution, consistent with the principles both of arbitration law and of claim and issue preclusion, is to insert an appropriate provision in the master arbitration contract that awards made thereunder shall be for the purposes of the dispute submitted only and shall have no carry-over effect. In the shorter run, pending the execution of such an amendment to the master agreement, appropriate clauses of similar limitation may be included in all future submissions under the present arbitration agreement, and postaward limiting agreements may be executed with respect to outstanding awards. The classic method for limiting the scope and effect of agreements to arbitrate, as we so frequently both caution and hold, is for the parties themselves to include the desired limitations in their own arbitra *194 tion agreements or submissions (e.g., Stanley & Son v Trustees of Hackley School, 42 NY2d 436, 438-439).
One final, general observation is pertinent. It has been suggested that in the range of procedures for dispute-resolution, there is a place for a very informal, quick means for reaching a decision when one or perhaps both contestants are prepared, or even desire, to make an abbreviated submission with little or no real contest. The argument is made that opportunity for such summary dispositions should not be inhibited by automatically according a binding estoppel effect to the first determination when the same issue later arises in a second controversy. It is said that Schwartz reflects a judicial awareness that in circumstances arising exclusively in the setting of judicial proceedings it is not always fair to hold a litigant to a prior adverse determination and that the principles enunciated in that case provide the possibility of avoidance of such estoppel when manifest fairness calls for it. In circumstances involving arbitration, however, the parties themselves can formulate their own contractual restrictions on carry-over estoppel effect. They cannot, of course, impose similar limitations which would impair or diminish the rights of third persons. In this sense there is a real difference between situations of issue preclusion between the same parties and issue preclusion between different parties.
For the reasons stated, the order of the Appellate Division should be affirmed, without costs.

. The Committee on Insurance Arbitration describes itself as "the governing body authorized by over six hundred signatory insurance companies throughout the United States and its possessions to administer, set policy for and resolve questions of jurisdiction as to the several inter-company arbitration facilities conducted under its auspices. In addition to the Nationwide Inter-Company Arbitration Agreement involved in this appeal, the Committee operates twenty-two other arbitration forums.”

. The terms "res judicata” and "direct” and "collateral estoppel” have been used with varying meanings in different contexts. It is thought that both analysis and exposition will be advanced by recourse to the terminology adopted by the Restatement, Judgments (2d). Thus, by "claim preclusion” it is intended to refer to situations in which one of the parties to a prior action or proceeding is foreclosed in a second action or proceeding between the same parties from relitigating a claim or cause of action (not infrequently involving several discrete issues) which was the subject matter of the prior action or proceeding (op. tit., §§ 41-61.2). "Issue preclusion” refers to discrete issues of fact or law rather than to claims or causes of action, and may arise in either of two situations:—where the parties are the same and one is barred from relitigating an issue which was adjudicated in the prior action or proceeding between them (op. tit., § 68); or where the parties are not the same but nonetheless one of the parties to the subsequent action or proceedings is foreclosed in the second from relitigating an issue which was determined in the first action or proceeding (op. tit., § 88). The case now before us presents an instance of issue preclusion between the same parties. That is, American and Aetna were adversaries in the arbitration proceeding involving the property damage claim in which one issue was Aetna’s right to disclaim coverage. In the present, second action, in which Aetna and American are likewise adversaries but the claim is for personal injuries rather than for property damage, American seeks to preclude Aetna from relitigating the same issue—Aetna’s right to disclaim coverage.

. In response to the concern expressed in the dissent for the interests of the insureds, we note that the Messingers (the only insureds whose economic interest may be involved) participated in the initial stages of the present litigation, but chose not to participate in the appeal in our court. Presumably they found the disposition at Special Term (affirmed at the Appellate Division and now by us) acceptable, perhaps preferring to look to the coverage afforded Zook by Aetna rather than to uninsured motorist coverage under their own policy. On the other hand had Aetna’s right to disclaim been upheld in the original property damage subrogation arbitration, there is no reason to assume that the Messingers would later have been bound thereby, since they were not parties to the arbitration proceeding and had no opportunity to litigate the issue.